# MERCHANTS STATE BANK OF VELVA, a Corporation, v. PHILLIP KERSHTIEN.

### (144 N. W. 1080.)

**Chattel mortgage — foreclosure — payment — appeal — trial de novo — judgment.**

In an action to foreclose certain chattel mortgages executed and delivered by defendant to plaintiff, the defense was that of payment by the sale and transfer of a quarter section of land at an agreed consideration. A counterclaim was also alleged for a balance claimed to be due the defendant from the plaintiff on such purchase price after satisfying such mortgage indebtedness. Plaintiff bank denied such sale and transfer.

On a trial *de novo* in this court the evidence is examined, and it is *held* that the issues were correctly decided by the lower court in defendant's favor, with the exception that the amount allowed defendant under his counterclaim was excessive. In this respect the judgment is modified to conform to the evidence, and as thus modified, the same is affirmed.

Opinion filed December 29, 1913.

Appeal from District Court, Ward County, *K. E. Leighton,* J.

Action to foreclose certain chattel mortgages. Defense payment and counterclaim. From a judgment in defendant's favor, plaintiff appeals.

Modified and affirmed.

*Noble, Blood, & Adamson,* for appellant.

*George A. McGee,* for respondent.

FISK, J. This is an action by the plaintiff bank to foreclose two chattel mortgages executed and delivered by defendant to such bank on October 10, 1905, to secure the payment of two promissory notes at that time executed and delivered by defendant to plaintiff, one for the sum of $215 and the other for the sum of $730, both payable on October 10, 1906, and bearing interest at the rate of 12 per cent per annum from date. The complaint is in the usual form. The answer

admits the execution and delivery of the notes and mortgages as alleged, and alleges, by way of defense, that the same have been fully paid and satisfied. Such answer also pleads facts to the effect that in the month of October, 1906, defendant sold to the plaintiff certain described real property consisting of 160 acres, at the agreed price of $3,000 less encumbrances thereon, aggregating $1,489.55, and that plaintiff retained from the purchase price thereof a sufficient sum to pay and satisfy said notes and mortgages. Such answer thereafter sets forth a counterclaim alleging the sale of such land by the defendant to the plaintiff, and that there is a balance still due the defendant from the plaintiff on such agreed purchase price, of the sum of $565.45, for which he prays for an affirmative judgment. Plaintiff served a reply, putting in issue the facts alleged in the counterclaim.

The issues thus framed by the pleadings were tried by the district court without a jury, and at the conclusion of the trial findings of fact and conclusions of law favorable to the defendant were made and filed, and judgment entered in defendant's favor for the sum of $442.86, with interest and costs, from which judgment this appeal is prosecuted. The case is here for trial *de novo*.

During all the transactions had by defendant with plaintiff bank, one G. N. Livdahl represented the bank as its cashier or managing officer, and the record discloses that certain negotiations were had between Livdahl and the defendant in the fall of 1906, looking to a trade whereby defendant was to enter into a contract for the purchase of 400 acres of land, and as a part payment of the purchase price he was to transfer title to a quarter section described in exhibit "6," at the agreed price of $3,000, the value of his equity over and above the encumbrances thereon, which was then thought to be about $1,500, to be thus applied on such purchase price. Pursuant thereto, exhibit "6," which is a warranty deed, was executed and delivered by defendant and wife to Livdahl, but the contract for the sale and purchase of the 400-acre tract was never executed owing to a dispute or misunderstanding as to the consideration to be paid, Livdahl claiming and testifying that the price was to be $20 per acre, while defendant testified that the agreed price was $15 per acre. Defendant also testified that in such negotiations Livdahl represented to him that he was acting for the bank, and that he so understood and believed, while Livdahl positively denies this,

and testified that the 400-acre tract was his individual property and that the bank had no interest therein whatsoever. Defendant also testified that after the deal as to the 400-acre tract fell through, he entered into an agreement with the bank, acting through Livdahl, to the effect that the agreed value of his equity in the quarter deeded by himself and wife by exhibit "6" should be applied by the bank to the indebtedness due from him on the notes and chattel mortgages described in the complaint, and that the balance should be paid to him.

The principal ground of controversy is over the issue of fact as to whether in these transactions, and especially the last one, wherein the defendant contends that he was to be credited by the plaintiff bank for the value of his equity in the land deeded by himself and wife, on his indebtedness represented by these notes, and the surplus paid to him, Livdahl acted for and as the manager of the bank, or merely, as he contends, in his individual capacity. Upon this issue the testimony of Livdahl and of defendant is in direct conflict. The record leaves the question in some doubt, but the trial court had the opportunity which we do not possess, of hearing the witnesses testify, and after a careful consideration of the evidence printed in the abstract, we feel reasonably well satisfied that in the main the findings are correct, and should not be disturbed. The testimony of the defendant is positive, unequivocal, and consistent throughout, and it impresses us as being truthful; while that of Livdahl is somewhat inconsistent, vacillating, and fails to impress us favorably. The defendant's version of the transaction is quite reasonable and probable upon its face, while we cannot say as much for the testimony of the witness Livdahl. After the deal fell through as to the 400-acre tract of land, it impresses us as rather strange that Livdahl should retain defendant's deed to the quarter which he deeded, without offering to pay the value of defendant's interest in such land, but it is quite natural and reasonable that he should make the deal in behalf of the bank, as testified to by defendant, to apply the value thereof upon the notes in suit. Whether the original deal was or was not between defendant and Livdahl individually, instead of the bank, is not very material or controlling, for in either aspect of this question Livdahl, who, under the testimony, was the active and sole representative and manager of the bank, had the undoubted authority in its behalf to enter into the subsequent arrangement testified to by defendant.

Livdahl testified positively that at the time exhibit "6" was executed and delivered by the defendant and his wife, his name, as grantee, was inserted therein, and that the words "Gustave N. Livdahl, McHenry, North Dakota," which appear in typewriting, were inserted at the same time and in the same ink as the other typewritten portions were inserted at the date the deed was prepared; but we are clearly convinced that he was either mistaken or intentionally testified falsely, for it is manifestly apparent from an inspection of the original deed that such is not the fact, for the ink is of a different shade from the balance of the instrument. This witness, later in his testimony, sought to explain the difference in the shade of ink by testifying that he had a typewriter with a tricolor ribbon. However, whether the words above quoted were, as a matter of fact, inserted in the deed before its execution and delivery, is not of controlling importance. Defendant's version of the transaction is corroborated by the fact appearing in evidence that the bank, in 1907 or 1908, received certain rents from the tenant who farmed such quarter; and it also appears that Livdahl went with defendant to make the arrangement with such tenant to crop the land. This fact is inconsistent with Livdahl's contention that neither he nor the bank has, or claims to have, any interest in such quarter. There are other circumstances throughout the testimony tending to corroborate the contention of the defendant, but we deem it unnecessary to review the testimony at length in this opinion. Suffice it to say that, except in the particulars hereafter mentioned, the findings of the trial court not only have abundant support in the testimony, but we deem them in accord with the clear preponderance thereof.

We think the judgment should be modified with respect to the amount of defendant's recovery under his counterclaim. The trial court found that the encumbrances against such quarter aggregated the sum of but $1,500, thus leaving defendant's equity worth the sum of $1,500. But the proof, we think, fairly tends to show that such encumbrances aggregated about the sum of $1,660, and that consequently the value of defendant's equity was but $1,340, and, after deducting the indebtedness of $1,057.14 represented by such notes, the balance of $282.86 is the amount due defendant, with interest to be added from October 6, 1906, at the legal rate.

The trial court is directed to modify its judgment accordingly, and

as thus modified the same will be affirmed, but without costs to either party.

Goss, J., being disqualified, took no part in the decision.